# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

**DAVID KELLEY ADAMS,**                )
                                       )
      **Plaintiff,**                      )
                                       )      **Case No. 3:14-cv-01241**
    **v.**                                 )      **Judge Campbell / Knowles**
                                       )
**CAROLYN W. COLVIN,**                 )
**Acting Commissioner of Social Security,**   )
                                       )
      **Defendant.**                      )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 17

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff filed his application for Supplemental Security Income ("SSI") on July 30, 2010,

1

alleging that he had been disabled since July 1, 2007, due to type II diabetes, high blood pressure, depression, and torn rotator cuff of the right shoulder. *See, e.g.,* Docket No. 10, Attachment ("TR"), pp. 127-30, 142. Plaintiff's application was denied both initially (TR 61) and upon reconsideration (TR 62). Plaintiff subsequently requested (TR 79-81) and received (TR 34-60) a hearing. Plaintiff's hearing was conducted on October 25, 2012, by Administrative Law Judge ("ALJ") H. Scott Williams. TR 34-60. Plaintiff and Vocational Expert ("VE"), Charles Wheeler, appeared and testified. *Id.*

On November 30, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-32. Specifically, the ALJ made the following findings of fact:

> 1. The claimant has not engaged in substantial gainful activity since June 16, 2010, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: diabetes mellitus; hypertension; osteoarthritis of the right shoulder; sleep apnea; history of MRSA infection; obesity; degenerative disc disease; depression; and anxiety disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) that is limited to frequent lifting and carrying of up to ten pounds; occasional lifting and carrying of eleven to twenty pounds; sitting and standing for one hour at a time and walking for thirty minutes at a time;

sitting for eight hours in an eight-hour workday; standing for six hours in an eight-hour workday; walking for four hours in an eight-hour workday; occasional reaching (including overhead) with right upper extremity; frequent reaching (including overhead) with the left upper extremity; occasional operating of foot controls with the right foot; frequent operating of foot control with the left foot; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no exposure to unprotected heights; occasional exposure to moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme temperatures, and vibrations; occasional operating of a motor vehicle; and environments involving no more than moderate noise. He can perform activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, or two canes or two crutches; use standard public transportation; climb a few steps at a reasonable pace with the use of a single-hand rail; prepare simple meals and feed himself; care for his personal hygiene; and sort, handle, and use paper/files. He cannot walk a block at a reasonable pace on rough or uneven surfaces. He does not requires [*sic*] the use of a cane or have any visual limitations. Mentally, the claimant has more than a slight limitation but the ability to function satisfactorily in the areas of understanding and remembering simple instructions, carrying out simple instructions, making judgments on simple work-related decisions, carrying out complex instructions, making judgments on complex work-related decisions, and interacting appropriately with coworkers. He has a substantial loss in the ability to function effectively with regard to his ability to understand and remember complex instructions. He has a slight limitation but can generally function well in the areas of interacting appropriately with the public and supervisors and responding to usual work situations and changes in a routing work setting.

5.    The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.    The claimant was born on January 7, 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was

filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. The claimant has acquired work skills from past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferrable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 416.969, 416.969(a) and 416.968(d)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 16, 2010, the date the application was filed (20 CFR 416.920(g)).

TR 12-25.

On January 29, 2013, Plaintiff timely filed a request for review of the hearing decision.

TR 6. On April 23, 2014, the Appeals Council issued a letter declining to review the case (TR 1-4), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the

"listed" impairments[1] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) improperly weighed the opinions of his treating physicians; and (2) failed to analyze his severe cervical impairment under Listing 1.04. Docket No. 14-1. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision lacks substantial evidence and should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir.

1994).

**1. Opinions of Plaintiff's Treating Physicians**

Plaintiff argues that the ALJ's "treatment" of the opinions from Drs. Ninar Saha, Shawnda Hollie, and Roger Passmore, his treating physicians, "violates the treating physician rule." Docket No. 14-1, p. 11. Specifically, Plaintiff maintains that the ALJ "did not find the opinions of Drs. Saha, Hollie, and Passmore are not supported by the objective medical evidence or that they are inconsistent with the evidence as a whole, but proceeded to assessing the reliability of those opinions in relation to non-treating sources." *Id.*, *citing* TR 23-24. Plaintiff essentially argues that because the ALJ did not find their opinions to be unsupported by objective medical evidence or inconsistent with the evidence as a whole, the ALJ should have accorded their opinions controlling weight, not weighed their opinions against those of examining and non-examining sources. *Id.* Plaintiff contends, therefore, that the ALJ's failure to properly assess and weigh the opinions of his treating physicians "'denotes a lack of substantial evidence' and requires remand." *Id.*

Defendant responds that, when evaluating Plaintiff's credibility and residual functional capacity ("RFC"), the ALJ considered Plaintiff's daily activities and treatment records, and properly weighed the medical opinion evidence. Docket No. 17, p. 8-13. Defendant notes that the ALJ addressed the medical and testimonial evidence, including, *inter alia*, Plaintiff's daily activities and treatment records, as well as the October 2010 opinion of consultative examiner Bruce Davis, M.D.; the October 2010 opinion of consultative evaluators Robert Doran, M.A., and Mark Phillips, Ph.D.; the opinions of the state agency medical consultants, Michael Ryan, M.D., Howard Bronstein, M.D., Frank Kupstas, Ph.D., and "M. Berkowitz"; the May 2012

opinion of Ninar Saha, M.D., the October 2012 opinion of Shawnda Hollie, M.D., and the October 2012 opinion of Roger Passmore, M.D. *Id.*, at 8-9, 12, *citing* TR 14-16, 20-21, 23-24, 365-72, 375-77, 398-424, 477-78, 488-89, 653, 654. Defendant further responds that the ALJ appropriately explained his reasons for accepting or rejecting the opinions of record, and properly incorporated in to his RFC assessment those limitations he found to be credible, and consistent with, and supported by, the evidence. *Id.* at 10-11, 13.

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs

and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .

(4) Consistency.  Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 CFR § 416.927(c) (emphasis added).  *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[2]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight.  SSR 96-2p.

The Sixth Circuit has held that, "provided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (*quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)).  If the ALJ rejects the opinion of a treating source, she is required to articulate some

_____

[2] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

basis for rejecting the opinion.  *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  The

Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 CFR § 404.1502.

As noted, Plaintiff argues that because the ALJ did not find the opinions of treating

physicians Drs. Saha, Hollie, and Passmore to be unsupported by objective medical evidence or

inconsistent with the evidence as a whole, the ALJ should have accorded their opinions

controlling weight, not weighed their opinions against those of examining and non-examining

sources.  Docket No. 14-1, p. 11.  Plaintiff's contention ignores the fact that the Regulations

require the ALJ to evaluate *all* of the evidence of record, including *all* of the opinion evidence.

*See, e.g.,* 20 CFR § 416.927(c); 20 CFR § 404.1527(c) ("Regardless of its source, we will

evaluate every medical opinion we receive. . . ").  The ALJ in the instant action has done just

that.

With regard to Dr. Saha's treatment notes and opinions, the ALJ stated:

> In addition to his physical impairments, the claimant also has a
> history of treatment for bipolar disorder, depression, and
> schizoaffective affective disorder. He received mental health
> treatment form psychiatrist Nihar Saha, M.D., at Rivergate
> Psychiatric and Behavior ("Rivergate").  In August 2010, the
> claimant reported that he was "doing alright," and it was noted that
> he was psychologically stable.  At the time, his psychotropic
> medication regimen consisted of Buspar, Lamictal, Prozac, Xanax,
> and Deplin.  Exhibit 4F.
>
> In September 2010, the claimant again reported that he was "doing
> alright," and his mental health was again found to be stable.

Exhibit 20F.

. . .

Subsequent records from Dr. Saha show that the claimant consistently reported that he was doing well, and his mental health was consistently noted as being stable. Additionally, he reported looking for jobs, and in February 2012 he stated that he was going to be working for Comcast. In March 2012, he mentioned that he was remodeling a house and "staying busy." In July 2012, he stated that it was "very hot to work outside." Exhibits 20F and 31F.

. . .

Regarding his mental impairments, treatment records from Dr. Saha show that the claimant's symptoms remained stable and that the claimant consistently reported that he was doing well. Additionally, both Dr. Doran, the psychological consultative examiner and Dr. Saha assessed no more than moderate psychological limitations. Finally, the claimant's involvement in the various activities noted above, as well as his ability to independently perform daily living activities, show that his mental impairments are not as limiting as alleged.

. . .

As for the mental assessments, *great weight is given to the assessment of Dr. Saha, the claimant's treating psychiatrist, and significant weight is given to the assessments of Mr. Doran, the psychological consultative examiner, and the State agency psychological consultants.* Exhibits 8F, 12F, 17F, and 21F. *These assessments are consistent with Mr. Doran's evaluation findings, Dr. Saha's records which show that the claimant's psychological symptoms remained stable with medication, and the claimant's reported activities.*

TR 20, *citing, e.g.*, TR 318-42, 481-87, 488-90, 638-644 (emphasis added).

Regarding Dr. Hollie's treatment notes and opinions, the ALJ stated:

In March 2011, the claimant . . . contacted the Nashville Medical Group complaining of back pain and requesting a referral to a pain specialist and a prescription for a CPAP machine, which had apparently been approved for treatment of obstructive sleep apnea.

He was prescribed a CPAP machine, but it was noted in September 2011 that he used it only intermittently. By that time, he had also lost a significant amount of weight, and it was suggested that he had less severe apnea. Exhibits . . . 23F, and 30F.

In October 2011, it was noted that the claimant's sleep apnea was controlled. Additionally, records show that his diabetes remained well-controlled with his blood glucose levels staying around one hundred and twenty. Exhibits 23F and 30F.

. . .

[In February 2012,] the claimant's primary care provider noted that the claimant's joint pain occurred only intermittently and that his diabetes mellitus was stable with no associated symptoms. Exhibit 23F.

. . .

[In July 2012, the claimant's] primary care provider noted that the claimant's diabetes had remained stable without any associated symptoms. His blood pressure had been elevated, but he denied having any associated symptoms. Additionally, it was noted that he had "been using his hands a lot [*sic*] at work." Exhibit . . . 30F.

. . .

As for the claimant's diabetes and hypertension, it was noted in July 2012 that his diabetes was uncontrolled. However, he had a normal glycated hemoglobin level of five point four. His hypertension was found to be uncontrolled despite medical compliance, and he was prescribed an increased dosage of verapamil. Exhibit 30F.

. . .

Records show that the claimant last sought medical treatment in October 2012 when he presented to his primary care provider at the Nashville Medical Group complaining of bulging in his left upper extremity and decreased grip strength and reporting that he had been referred to an orthopedist for possible repair of a tendon injury. He also complained of intermittent bilateral hand tremors and neck pain. On examination, it was noted that he had a fine tremor, mild left forearm bulging, and decreased grip strength in

his left hand. Exhibit 36F. Lab testing was going to be performed to further evaluate the claimant's tremor, but it is unclear if this was done as no lab results were provided. Additionally, no additional records were provided regarding the claimant's left arm injury.

. . .

Consideration has been given to the treating source statements at Exhibits 25F and 33F-35F. However, *Exhibits 25F and 33F are given little weight as they do not reflect actual function-by-function limitations. Exhibit 34F states that the claimant cannot return to his "former line of work," which the undersigned does not dispute and which is consistent with vocational expert testimony. . . . Significant weight is therefore given to Exhibits 34F and 35F.*

TR 18-20, 23-24, *citing* TR 494-522, 543, 615-37, 653, 655-64 (emphasis added).

As to Dr. Passmore's treatment notes and opinions, the ALJ stated:

In August 2012, the claimant was treated for a forearm laceration sustained while using a high speed bur to sharpen a lawnmower blade. Exhibit 29F. His engagement in such activity suggests that his physical impairments were not as limiting as alleged.

. . .

Consideration has been given to the treating source statements at Exhibits 25F and 33F-35F. . . . *Exhibit 35F states that the claimant has limitations in activities that require kneeling, squatting, and walking on uneven surfaces, which is consistent with Dr. Davis's consultative examination assessment. Significant weight is therefore given to Exhibits 34F and 35F.*

TR 20, 23-24, *citing* TR 544-48, 602-14, 654, 670-76 (emphasis added).

In addition to the ALJ's discussion of Plaintiff's treating sources set forth above, the ALJ also discussed, *inter alia*, Plaintiff's hearing testimony and reported daily activities, Plaintiff's function report, the consultative examination notes and report of Bruce Davis M.D., the consultative examination of Robert Doran, M.A., the treatment records from Hailu Kabtimer,

M.D., the treatment records from Comprehensive Pain Specialists, the treatment records from

Baptist Healthcare Group, the outpatient hospital records from Baptist Hospital, the treatment

records from Elite Sports Medicine and Orthopaedic Center, the treatment records from

Nashville Medical Baptist Health, the treatment records from Thomas Dovan, M.D., the

radiology report from Premier Radiology Belle Meade, and the treatment records from Loden

Vision Center.  TR 13-22, *citing* TR 167-69, 225-342, 364, 365-74, 375-79, 380-88, 425-44,

445-66, 467-76, 523-42, 544-48, 549-56, 557-601, 645-51.

After discussing in detail the medical and testimonial evidence of record, the ALJ

explained:

> Overall the evidence of record does not support a finding of
> disability.  Prior to November 2010, the claimant had a rather
> unremarkable medical consultative examination, and he reported
> having only intermittent right shoulder pain that was alleviated with
> over-the-counter medication.  Additionally, an X-ray showed
> evidence of only mild osteoarthrosis.  In November 2010, the
> claimant had more abnormal findings on examination of his right
> shoulder with diagnostic imaging showing significant degenerative
> changes.  It was posited that he might need a total shoulder
> arthroplasty, but in January 2011 the claimant's treating orthopedist
> noted that the claimant was doing 'reasonably well with conservative
> management.
>
> After establishing care at CPS, a pain management provider, the
> claimant reported that his back pain was controlled with
> medication, and he reported moderate relief with use of a TENS
> unit.  Between December 2011 and June 2012, he consistently
> reported having only mild pain with ratings of two, three, or four
> on a ten-point scale.  Additionally, he reported involvement in
> activities which show that his symptoms and limitations were not
> as severe as alleged.  For example, in February 2012 he stated that
> he was going to be working for Comcast; in March 2012 he
> mentioned that he was remodeling a house and '"staying busy;"'
> 'in May 2012 he mentioned moving a refrigerator; in June 2012 he
> reported increasing his activities and replacing the plumbing in a

house; and in August 2012 he reported injuring his arm while sharpening a lawnmower blade.

Regarding the claimant's other physical impairments, his diabetes mellitus was consistently found to be stable with no associated symptoms. He had normal blood glucose levels that stayed around one hundred and twenty, as well as a normal glycated hemoglobin level of five point four. He was prescribed a CPAP machine in March 2011, and by October 2011 his sleep apnea was controlled. His blood pressure was often elevated despite medical compliance, but he consistently denied having any associated symptoms. Additionally, it does not appear that his obesity caused symptoms or limitations greater than those caused by his other impairments given his ability to participate in the aforementioned activities.

There is no indication that the claimant's MRSA infection or osteomyelitis lasted for a continuous period of at least twelve months. While he was diagnosed with cataracts, his ability to perform the physical activities noted above and drive show that his cataracts does not cause any significant limitations. Moreover, he reported having blurred vision only when not wearing glasses.

. . .

There is no indication that the claimant's medications cause adverse side effects that would affect his ability to perform work within his residual functional capacity. At the hearing, he alleged that his pain medications caused sleepiness. However, treatment records reflect consistent denials of any adverse side effects. . . .

TR 22-23.

As can be seen, the ALJ in the case at bar comprehensively evaluated the medical and testimonial evidence of record. *See* TR 13-25. In so doing, the ALJ discussed the evidence that was consistent with other evidence and also discussed the evidence that contradicted with, or was unsupported by, other evidence. As is appropriate, he accorded greater weight to that which was consistent, and accorded little weight to that which was not; there is no requirement that the ALJ either accept or reject an opinion in its entirety. The ALJ properly weighed the evidence, as well

as Plaintiff's credibility, and reached a reasoned decision that was supported by substantial evidence; he explained the weight he accorded to the evidence and the reasons therefore. Plaintiff's contention that the ALJ should have accorded the opinions of Drs. Saha, Hollie, and Passmore controlling weight, not weighed their opinions against those of examining and non-examining sources fails.

## 2. Listing 1.04

Plaintiff argues that, although the ALJ found Plaintiff's degenerative disc disease of the cervical spine to be a severe impairment at step two of the sequential evaluation process, he failed to analyze its severity against Listing 1.04 at step three of the sequential evaluation process. Docket No. 14, p. 9. Plaintiff asserts that spine disorders that are sufficient to warrant a finding of disability under Listing 1.04 are those evidenced by nerve root compression accompanied by "pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id.* Plaintiff contends that a March 1, 2012 MRI indicates moderate to severe stenosis and foraminal narrowing, nerve root compression, spinal cord flattening, and intervertebral disc collapse from C3 to C6, that were "consistently accompanied by pain, loss in muscle strength, limited range of motion without pain, and both sensory and reflex loss." *Id.* at 10, *citing* TR 463-74, 544, 554-614, 645-48. Plaintiff argues, therefore, that the ALJ's failure to analyze this disorder against Listing 1.04 constitutes ground for remand. *Id.*

Defendant responds that: (1) the ALJ properly reviewed the record as a whole; (2) the evidence does not support a finding that Plaintiff's impairments either met or medically equaled Listing 1.04A; (3) the ALJ explicitly stated that he considered Listing 1.00 in evaluating

Plaintiff's impairments; and (4) the ALJ properly concluded that Plaintiff did not meet or equal

that Listing.  Docket No. 17, p. 5, 7, *citing* TR 13-15.  Defendant notes that, despite Plaintiff's

back impairment, he worked part-time, replaced the plumbing in his house, and remodeled a

house.  *Id.* at 7, *citing* TR 483, 485, 501, 557, 561, 565, 575, 591, 598-99, 625, 638, 645.

Defendant argues: "Plaintiff's work activity despite this impairment is at odds with meeting or

equaling in severity a listing-level impairment as the listings are designed to preclude *any* gainful

activity."  *Id.* (italics in original).

Defendant additionally argues:

> Contrary to Plaintiff's argument, he does not have motor loss
> accompanied by sensory reflex loss.  The medical records show
> that Plaintiff had full strength with no muscle atrophy (Tr. 16-17,
> 366, 383, 448, 453, 600, 606, 609, 613).  Further, physical
> examinations revealed intact sensation and reflexes (Tr. 16, 367,
> 606, 608-09, 613, 665).  The medical records suggest that Plaintiff
> had temporary losses in strength and sensation, but they were
> related to other impairments that improved with treatment (Tr. 18,
> 20, 448, 451, 453, 455, 457, 468, 476, 655, 657, 671).  As Plaintiff
> retained full strength and intact sensation and reflexes, he did not
> meet or equal Listing 1.04A.

*Id.* at 6.

In order to meet or medically equal Listing 1.04A, a plaintiff must demonstrate a spinal

disorder with nerve root compression characterized by neuroanatomic distribution of pain,

limitation of motion of the spine, motor loss (either atrophy with associated muscle weakness or

muscle weakness) accompanied by sensory or reflex loss, and if there is involvement of the lower

back, positive straight-leg raising test (sitting and supine).  *See* 20 CFR Pt. 404, Subpt. P., App.

1, § 1.04A.  These must be established on the basis of objective observations during an

examination, not by subjective complaints.  *See* 20 CFR Pt. 404, Subpt. P., App. 1, § 1.00D.

The ALJ in the instant action explicitly stated that he had given "particular consideration to the claimant's physical impairments (see Sections 1.00, et seq., <u>Musculoskeletal System</u> . . .)," but ultimately concluded that, "Despite the claimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination."  TR 13 (emphasis original).

With regard to Plaintiff's March 1, 2012 MRI, the ALJ stated:

> . . . A cervical MRI scan demonstrated severe right foraminal stenosis at C2-3; moderate degenerative disease, mild central spinal stenosis, and moderate bilateral foraminal stenosis at C3-4; degenerative disc disease, spondylosis and moderate bilateral foraminal stenosis and central spinal stenosis with cord compression at C4-5; spondylosis, severe degenerative disc disease, and moderate to severe foraminal stenosis and central spinal stenosis with cord compression at C5-6; spondylosis, moderate degenerative disc disease, moderate central spinal stenosis with cord compression, and moderate to severe foraminal stenosis at C6-7; and moderate right foraminal stenosis at T1-2. However, despite those findings, the claimant endorsed having only mild pain, rating his pain a three on a ten-point scale. Exhibits 26F and 28F.

TR 19.

The ALJ then stated:

> The claimant continued to report having rather mild pain, with ratings of three or four on a ten-point scale.  He endorsed worsening pain in May 2012 but this occurred after he moved a refrigerator.  Exhibit 28F.

*Id.*

In addition to discussing Plaintiff's March 1, 2012 MRI and subjective complaints of pain, the ALJ discussed Plaintiff's back pain, imaging, and treatment starting in August 2010 and

continuing through the medical records from Premier Orthopaedics and Sports Medicine, which, in May, August, September, and October 2012 indicate that Plaintiff had full range of motion and no muscle atrophy. TR 16, 18, 19, *referencing* TR 606, 608-09, 613, 671. The ALJ also discussed Plaintiff's activities of daily living, which included, *inter alia*, his ability to perform household repairs, take care of himself and his dog, do laundry, and go grocery shopping. TR 13-14. The ALJ further noted that, in June 2012, Plaintiff reported that he had increased his activities and had been replacing the plumbing in a home (TR 19), and that, in August 2012, Plaintiff lacerated his forearm while using a high speed bur to sharpen a lawnmower blade (TR 20). The ALJ noted that Plaintiff's "engagement in such activity suggests that his physical impairments were not as limiting as alleged." *Id.*

While Plaintiff's March 1, 2012 MRI can show that Plaintiff has a spinal disorder with nerve root compression, the ALJ determined that Plaintiff's subjective complaints of pain were less than fully credible and the record does not establish the existence of neuroanatomic distribution of pain, limitation of motion of the spine, or motor loss (either atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. Additionally, as noted by the ALJ, no acceptable medical source has mentioned findings equivalent in severity to the requisite criteria. The ALJ's determination was proper; Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record (Docket No. 14) be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge